UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-00566-JVS (RNBx) | Date | May 31, 2011 |
|---|---|---|---|
| Title | The Prudential Insurance Company of America, et al v. Infinity Funding Corp., et al | | |

| Present: The Honorable | James V. Selna | |
|---|---|---|
| Loretta Anderson | | N/A |
| Deputy Clerk | | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) Order re: Motion for Preliminary Injunction

Plaintiffs The Prudential Insurance Company of America and Prudential Real Estate Affiliates, Inc. (collectively "Prudential") move for a preliminary injunction to enjoin Infinity Funding Corporation ("Infinity") and Vijay Patel ("Patel") (collectively "Defendants") from infringing use of Prudential's federally registered trademarks. The motion is unopposed. The motion is GRANTED.

I.     BACKGROUND

Prudential is a nationally known company and has, since 1875, been identified by the name Prudential and various famous trademarks including its Rock of Gibralter logo. (Mansur-Brown Decl. ¶ 3.) Prudential is the owner of a number of federally registered trademarks including Nos. 1,555,000; 1,580,456; 1,616,000; 1,678,791; 1,729,784; 1,836,987; 1,970,168; 2,110,034; 2,120,631; 2,214,283; 2,440,671; 2,488,544; 2,488,926; 2,549,502; 2,646,316; 2,599,530; 3,229,719 (the "Prudential Marks"). (Mansur-Brown Decl. ¶ 3.) As a result of continuos use of the Prudential Marks, Prudential has developed significant goodwill throughout the United States, including in California. (Mansur-Brown Decl. ¶ 6.) Prudential Real Estate Affiliates, Inc. ("PREA") is a real estate brokerage franchisor and an affiliate of Prudential. (Mansur-Brown Decl. ¶ 2.) Since April 1987, PREA has continuously used the Prudential name and marks to identify its real estate franchising and related services. (Mansur-Brown Decl. ¶ 2.)

On February 1, 2000, PREA and Infinity's predecessor-in-interest, Manhattan Mortgage Corporation ("Manhattan") entered into a real estate brokerage franchise agreement, whereby Manhattan became a franchisee of Prudential. (Mansur-Brown Decl.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-00566-JVS (RNBx) | Date | May 31, 2011 |
|---|---|---|---|
| Title | The Prudential Insurance Company of America, et al v. Infinity Funding Corp., et al | | |

¶ 7.) On or about February 1, 2000, Patel entered into a Nondisclosure, Noncompetition and Nontransfer Covenant and Personal Guarantee in connection with the franchise agreement between PREA Manhattan. (Mansur-Brown Decl. ¶ 9.) On May 17, 2010, PREA, Manhattan and Infinity entered into an Addendum to Franchise Agreement-Assignment by Franchisee ("Assignment Addendum") with an effective date of January 1, 2008. (Mansur-Brown Decl. ¶ 8.) Pursuant to the Assignment Addendum, Infinity succeeded to the interests of Manhattan as the franchisee under the original franchise agreement and assumed all of the obligations under the franchise agreement. (Mansur-Brown Decl. ¶ 8.) On or about May 17, 2010, Patel entered into a second Nondisclosure, Noncompetition, and Nontransfer Covenant and Personal Guarantee in which Patel agreed to be personally bound by the franchise agreement and to guarantee the performance of all the terms of the franchise agreement by Infinity, including the payment of all sums due under the franchise agreement. (Mansur-Brown Decl. ¶ 10.)

In December 2010, through an independent accounting of Infinity's records, Prudential discovered that Defendants had under-reported gross commission income by $903,022.57 for the period of January 1, 2008 through December 31, 2000. (Mansur-Brown Decl. ¶ 11.) As a result, Defendants owed Prudential approximately $67,418.90 in royalty fees, advertising fees, late fees and accountant fees. (Mansur-Brown Decl. ¶ 11.) Prudential also noted that as of February 17, 2011 Defendants failed to pay Prudential continuing royalties and other fees in the amount of $8,321.19, late charges on that amount and failed to timely report and pay on closed transactions for the previous 67 days. (Mansur-Brown Decl. ¶ 12.)

On February 17, 2011, Prudential sent Defendants a Notice of Default and Termination, notifying the parties that they were in breach of the franchise agreement and providing them with a fourteen day opportunity to cure the breach. (Mansur-Brown Decl. ¶ 13.) At Defendants' request, Prudential extended the cure period until March 14, 2011. (Mansur-Brown Decl. ¶ 13.) Upon failure of Defendants to cure the breaches set forth in the Notice of Default, Prudential terminated the franchise agreement upon notice on March 21, 2011. (Mansur-Brown Decl. ¶ 14.) The termination was effective immediately. (Mansur-Brown Decl. ¶ 14.)

Between March 28, 2011, and April 12, 2011, counsel for Prudential sent multiple letters to Defendants and Mr. Steven Ibarra, a lawyer who claimed to represent Defendants, reminding each that the franchise agreement had been terminated and that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-00566-JVS (RNBx) | Date | May 31, 2011 |
|---|---|---|---|

| Title | The Prudential Insurance Company of America, et al v. Infinity Funding Corp., et al |
|---|---|

the Defendants had no right to continue to use Prudential's trademarks including the Prudential name. (Mansur-Brown Decl. ¶¶ 15-18.)

On March 12, 2011, Prudential filed a complaint against Defendants alleging: (1) Breach of Contract against Franchisee; (2) Breach of Contract Against Guarantor; (3) Infringement of Federally Registered Trademarks; (4) Violation of Lanham Act by Use of False Designation in Interstate Commerce; (5) Dilution of Federally Registered Mark; (6) Unfair Competition; and (7) Common Law Trademark and Tradename Infringement. (Docket No. 1.) On April 27, 2011, Prudential filed the instant Motion for Preliminary Injunction seeking to enjoin their former franchisee Infinity and its guarantor Patel from wrongfully using Prudential's name and federally registered trademarks in Defendants' real estate brokerage businesses. (Docket No. 10, p.1.)

II.  LEGAL STANDARD

On an application for a preliminary injunction, the plaintiff has the burden to establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm if the preliminary relief is not granted, (3) the balance of equities favors the plaintiff, and (4) the injunction is in the public interest.  Winter v. Natural Res. Def. Council, Inc., --- U.S. ----, 129 S. Ct. 365, 374 (2008).

III.  DISCUSSION

   A.   Likelihood of Success on the Merits

Prudential brings seven substantive claims for relief: (1) breach of contract against franchisee, (2) breach of contract against guarantor, (3) infringement of federally registered trademarks, (4) false designation of origin under the Lanham Act, (5) dilution under the Lanham Act, (6) violation of California's Unfair Competition Law, and (7) common law trademark infringement.

   1.   *Breach of Contract Claims*

Prudential is likely to succeed on the merits of both its breach of contract claim against the Franchisee, Infinity and its breach of contract claim against the Guarantor, Patel. To prevail on its breach of contract claims under California law, Prudential must

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-00566-JVS (RNBx) | Date | May 31, 2011 |
|---|---|---|---|

| Title | The Prudential Insurance Company of America, et al v. Infinity Funding Corp., et al |
|---|---|

prove: (1) the existence of a contract, (2) Prudential's performance of the contract, (3) breach by Defendants, and (4) damage or loss. *See* First Commercial Mortg. Co. v. Reece, 89 Cal. App. 4th 731, 745 (2001).

On the present record, Prudential has demonstrated that it is likely to succeed on the merits of both of its breach of contract claims. First, Prudential has proved the existence of a contract in each claim. Prudential has produced a copy of the Franchise Agreement between Prudential and Infinity that is signed by agents for Prudential and Patel, President of Infinity. (Docket No. 12, Ex. A.) Prudential has also produced a copy of the Nondisclosure, Noncompetition and Nontransfer Covenant and Personal Guarantee in which Patel agreed to be personally bound by the Franchise Agreement. (Docket No. 12, Ex. C.) In relevant portions the franchise agreement which binds both Infinity and Patel requires the franchisee to pay to Prudential: a royalty on all revenues derived from the franchised business based on a percentage of gross revenue, a monthly advertising fee, and any additional amounts payable as shown by an audit conducted by Prudential. (Docket No. 12, Ex. A.) Upon termination or expiration of the franchise agreement, the franchise agreement also requires the franchisee to: remove all signs bearing Prudential's service marks, remove service marks from all letterhead, stationary, advertisements or other forms used by the Franchisee, and to permanently discontinue all advertising of Franchisee to the effect that Franchisee is associated or affiliated with the Franchisor.

Second, there are no allegations or evidence that Prudential has failed to perform its obligations under the franchise agreement.

Third, Prudential provides thorough support for its claim that Defendants breached the franchise agreement and the Nondisclosure, Noncompetition, and Nontransfer Covenant and Personal Guarantee. Prudential's primary claim is that Defendants breached the franchise agreement by failing to report gross revenues, failing to pay royalties, advertising fees and other fees due under the franchise agreement, and continuing to use Prudential's name and marks after termination of the franchise agreement. (Compl. ¶¶ 36, 41.) Prudential supports its contention that Defendants breached the franchise agreement by citing a December 2010 independent audit that revealed Infinity had under reported gross commission income by $903,022.57 for the period of January 2008 through December 2009. (Mansur-Brown Decl. ¶ 11.) Additionally, the declaration of Mark Wilson provides written and photographic evidence that after the franchise agreement was terminated, Defendants continued to use the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 11-00566-JVS (RNBx) | Date | May 31, 2011 |
| Title | The Prudential Insurance Company of America, et al v. Infinity Funding Corp., et al | | |

Prudential Marks on advertisements, signs, letterhead, and stationary. (see Wilson Decl. ¶¶ 2-6, Exs. A-F.)

Fourth, Prudential has produced evidence of actual damages in the amount of $67,418.90. (Mansur-Brown Decl. ¶ 11.)

Because Prudential has presented credible evidence in support of every element of its breach of contract claims, Prudential is likely to succeed on the merits of its breach of contract claims against both the Franchisee, Infinity, and the Guarantor, Patel.

> 2. *Infringement of Federally Registered Trademarks, False Designation of Origin, State Law Unfair Competition and Common Law Trademark Infringement.*

Prudential is also likely to succeed on the merits of its claims of federal trademark infringement, false designation of origin, state law unfair competition and common law trademark infringement. The ultimate test of all four claims is whether the public is likely to be deceived or confused by the similarity of the marks. See Academy of Motion Picture Arts & Sciences v. Creative House Promotions Inc., 944 F.2d 1446, 1457 (9th Cir. 1991) (internal citations and quotations omitted); Phillip Morris USA Inc. v. Shalabi, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) (stating that the essential elements for a federal trademark infringement claim, federal false designation of origin claim and a California unfair competition claim are identical); Toho Co., Ltd. v. Sears, Roebuck & Co., 645 F. 2d 788, 791 (9th Cir. 1981) (noting that California trademark law focuses on the likelihood of confusion as to source or sponsorship). Consequently, Prudential's likelihood of success on the merits of its trademark infringement claim establishes Prudential's likelihood of success on the merits of its false designation of origin claim, state law unfair competition claim and common law trademark infringement claim.

The Lanham Act was intended to make "actionable the deceptive and misleading use of marks and to protect persons engaged in . . . commerce against unfair competition." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 767-68 (1992) (quoting 15 U.S.C. § 1127) (internal quotations omitted). To establish infringement of a registered trademark under the Lanham Act, the plaintiff "must show that it is (1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark." Grocery Outlet Inc. v. Albertson's Inc., 497 F.3d 949, 951

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 11-00566-JVS (RNBx)    Date  May 31, 2011

Title  The Prudential Insurance Company of America, et al v. Infinity Funding Corp., et al

(9th Cir. 2007) (citations omitted).  The Court finds that Prudential has met both requirements, and hence has shown probable success on the merits of its infringement claim.

As the undisputed owner of the Prudential Marks, Prudential readily satisfies the first element. Prudential registered the first of its Prudential Marks on September 5, 1989 and has registered numerous additional marks since that date. (Mansur-Brown Decl. ¶ 3.)

The Court next considers whether Defendants marks are confusingly similar to Prudential's marks. The likelihood of confusion is the central element of trademark infringement. GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000). The issue is whether the similarity of the marks is likely to confuse customers about the source of the products.  In the Ninth Circuit, district courts must consider the following eight factors in deciding this issue: (1) strength of the mark, (2) proximity of the goods, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) type of goods and the degree of care likely to be exercised by the purchaser, (7) defendant's intent in selecting the mark, and (8) likelihood of expansion of the product lines. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-349 (9th Cir. 1979); see also GoTo.com, 202 F.3d at 1205 ("We have developed eight factors, the so-called Sleekcraft factors, to guide the determination of likelihood of confusion").

Defendants' use of exact Prudential Marks, by definition, meets the Sleekcraft standard for likelihood of confusion. As such, the Court is satisfied that Prudential is likely to succeed on the merits of its claims of federal trademark infringement, federal false designation of origin, state law unfair competition and common law trademark infringement.

   3. *Dilution*

Prudential is also likely to succeed on the merits of its claim of trademark dilution. The owner of a famous mark is entitled to a preliminary injunction against any person whose use of the famous mark in commerce is likely to cause dilution through blurring. 15 U.S.C. § 1125(c). The Court is satisfied that Prudential will be able to prove that it owns a famous mark and that Defendants use of the Prudential Marks is likely to cause dilution through blurring of the distinctiveness of the Prudential Marks.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 11-00566-JVS (RNBx) | Date | May 31, 2011 |
| Title | The Prudential Insurance Company of America, et al v. Infinity Funding Corp., et al | | |

      A famous mark is a mark that is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). In determining whether a mark is famous, the Court may consider a number of factors including (1) the duration, extent and geographic reach of advertising and publicity of the mark; (2) the amount, volume and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark was registered under the Act of March 3, 1881 or the Act of February 20, 1905, or on the principal register. 15 U.S.C. § 1125(c)(2)(A)(i)-(iv). The Prudential Marks possess the requisite degree of recognition. Since 1875, Prudential has continuously used "Prudential," alone or in combination with other words, in interstate commerce as a trademark and service mark. (Docket No. 1 ¶ 9.) The Prudential marks are advertised prominently throughout the United States. (Docket No. 1 ¶ 10.) According to Prudential, the Prudential trademarks are "among the most enduring and widely recognized brands in U.S. Corporate history." (Docket No. 1 ¶ 12.) Additionally, the Prudential Marks are registered on the United States Patent and Trademark Office's Principal Register. (Docket No. 1 ¶ 13.) The Court is satisfied that Prudential owns at least one famous mark.

      The Court is also satisfied that Prudential will be able to prove that the Defendants' acts caused dilution of the Prudential Marks by blurring. Dilution by blurring is an association arising from the similarity between a mark and a famous mark that impairs the distinctiveness of the famous mark. 15 U.S.C. § 1125(c)(2)(B). In determining whether a mark is likely to cause dilution by blurring, the Court may consider the following factors:

      (i) The degree of similarity between the mark or trade name and the famous mark. (ii) The degree of inherent or acquired distinctiveness of the famous mark. (iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark. (iv) The degree of recognition of the famous mark. (v) Whether the user of the mark or trade name intended to create an association with the famous mark. (vi) Any actual association between the mark or trade name and the famous mark.

15 U.S.C. § 1125(c)(2)(B)(i)-(vi). Prudential has produced evidence that all of factors relating to dilution by blurring weigh in favor of Prudential. As previously noted, the Court believes Prudential owns a number of famous marks. Defendants are using

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 11-00566-JVS (RNBx) | Date | May 31, 2011 |
|---|---|---|---|
| Title | The Prudential Insurance Company of America, et al v. Infinity Funding Corp., et al | | |

Prudential's exact marks, which were licensed to them through a franchise agreement with Prudential. (see Mansur Brown Decl. Ex. A; Wilson Decl. ¶¶ 2-6, Exs. A-F.) Defendants licensing of the Prudential Marks clearly indicates that Defendants intended to create an association between the Defendants and Prudential.

The Court finds that Prudential is likely to succeed on the merits of its dilution claim under 15 U.S.C. § 1125(c) because it owns a famous mark which is likely to lose distinctiveness based on Defendants' actions.

B. <u>Irreparable Harm</u>

Prudential claims that it will likely suffer irreparable harm to its reputation and goodwill if Defendants are not enjoined from using the Prudential Marks. "In trademark cases, courts have found irreparable harm in the loss of control of a business' reputation, a loss of trade and loss of goodwill. . . Potential damage to reputation constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case." <u>CytoSport, Inc. v. Vital Pharm., Inc.</u>, 617 F. Supp. 2d 1051, 1080 (E.D. Cal. 2009).

The Court finds that Prudential has likely lost some control over its reputation in the market as a result of Defendants' unauthorized use of the Prudential Marks. Because Prudential has likely lost control over its reputation, the Court is satisfied that Prudential has, or will likely, suffer irreparable harm to its reputation and goodwill.

C. <u>Balance of Equities Favors Prudential</u>

It is clear that the balance of equities favors Prudential. As discussed, Prudential faces the likelihood of substantial injury if an injunction is not issued. Defendants however, will not suffer any recognizable harm. A preliminary injunction will protect Prudential from economic and reputational harm caused by Defendants' continued use of the Prudential Marks but will not prevent Defendants from offering and providing real estate services.

D. <u>Injunction is in the Public Interest</u>

A preliminary injunction against Defendants is also in the public interest. In the trademark context, the public interest at stake "is the right of the public not to be deceived

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 11-00566-JVS (RNBx) | Date | May 31, 2011 |
| Title | The Prudential Insurance Company of America, et al v. Infinity Funding Corp., et al | | |

or confused." CytoSport, Inc., 617 F. Supp. at 1081. The Court notes that in the context of a terminated franchisee, the "potential for consumer confusion is even greater than in cases of random infringement." Paisa, Inc. v. N & G Auto, 928 F. Supp. 1009, 1013 (C.D. Cal. 1996).

The Court finds that a preliminary injunction is in the public interest because there is a high likelihood of consumer confusion. Defendants were franchisees of Prudential for over ten years. (see Mansur-Brown Decl. ¶ ¶ 7-12.) During that period, Defendants utilized the Prudential Marks to associate their real estate services with Prudential. Defendants' use of the Prudential Marks after the franchise agreement between Prudential and Defendants was terminated, is highly likely to confuse consumers as to an association between Defendants and Prudential. In the interest of decreasing or eliminating consumer confusion, the Court finds that a preliminary injunction is warranted.

IV.     CONCLUSION

For the foregoing reasons, the motion for a preliminary injunction is GRANTED.

The Court has reviewed Prudential's proposed order granting a preliminary injunction and the Court finds the proposed order in proper form and accordingly will enter the order.

The Court finds that oral argument would not be helpful on this matter and therefore vacates the June 6, 2011 hearing. Fed. R. Civ. P. 78; no, i L.R. 7-15.

IT IS SO ORDERED.

|  | 0 | : | 0 |
|---|---|---|---|
| Initials of Preparer | lma | | |